## DAN A. FRENCH

*v.*

## AARON C. GOODMAN *et al.*

*Filed at Ottawa April 3, 1897—Rehearing denied October 7, 1897.*

1. BURNT RECORDS—*decree of title and of lien in favor of same party is erroneous.* A decree under the Burnt Records act which treats the title of the premises as being in one party and also establishes a lien in such party's favor thereon, upon the theory that the title is in his adversary, is erroneous.

2. SAME—*when prayer for general relief will not sustain decree of foreclosure.* A petition under the Burnt Records act for the purpose of establishing title in fee in land, and not merely to establish a lien thereon, will not support a decree of foreclosure, though containing a prayer for general relief.

3. SAME—*decree must not leave the title uncertain.* Under a petition and cross-petition, each claiming the premises in fee in the respective parties, filed under the Burnt Records act, the court cannot, in its decree, leave the title dependent upon the satisfaction of a lien by one party in favor of the other.

4. MORTGAGES—*mere possession by mortgagee does not bar equity of redemption.* Mere possession of the mortgaged premises by a mortgagee, though it may be lawfully held until the debt is satisfied, will not ripen into a title in fee or bar the equity of redemption.

5. ADVERSE POSSESSION—*when adverse possession of vacant premises is sufficient.* Adverse possession of vacant land is sufficiently established, under the seven years' statute of limitations, by such possession and acts of ownership as the premises are in their situation susceptible of, particularly as against claimants who have abandoned the possession to a lienholder because the lien exceeded the value of the property.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

This is a proceeding under the Burnt Records act. The destruction of records has nothing to do with the case, but is alleged simply for the purpose of giving the court jurisdiction. The property in controversy is lots 7 to 11 and 13 to 18, both inclusive, in block 27, original subdivision of Montrose, a subdivision of the north-west quarter and the north half of the south-west quarter of

section 15, and the east half of lot 1 of a subdivision of the north half of section 16, all in township 40, range 13, east of third principal meridian, in Cook county, Illinois.

Plaintiff in error, Dan A. French, and defendant in error Aaron C. Goodman, each claims title to the premises in fee. French filed the original petition, alleging title in Franklin D. Cossett by conveyance from the United States, and then set up that Cossett conveyed to Francis Vail by warranty deed of January 12, 1874; that Vail at the same time executed a trust deed on the premises to David B. Lyman, trustee, to secure the payment of a note to Cossett for $4950, of even date, due in five years, with eight per cent interest; that Vail conveyed by warranty deed of July 25, 1874, to August and John M. French, subject to the said trust deed; that on March 19, 1880, Franklin D. Cossett and wife conveyed by war-· ranty deed to Aaron C. Goodman; that on January 21, 1892, August French and John M. French, with their wives, conveyed by warranty deed to him, Dan A. French; that all of said conveyances were recorded in the recorder's office of Cook county. He also alleged that the Frenches filed their petition in bankruptcy on August 31, 1878, but omitted from their schedule of assets the property in question, it not being then considered worth the incumbrance upon it of $4950, and that said bankrupts were afterwards duly discharged, October 3, 1883.

Goodman, after answering the petition, filed his cross-bill, in which he set up the same conveyances alleged in the petition, and averred that immediately after he acquired title by warranty deed through Cossett, in 1880, he took and remained in possession of the premises for more than seven years thereafter, paying all taxes assessed thereon, and claiming title, by virtue of these facts, under the seven years statute of limitations; also, that on January 23, 1892, the assignee in bankruptcy of the estate of the Frenches, Albert E. Jenkins, in pursuance of an order of court, sold the premises to one Chaf-

fee, who bought the same on behalf of the Frenches; also, that prior to the time of filing the petition in bankruptcy the Frenches informed Cossett, who was the owner of the note executed by Vail and secured by the trust deed to Lyman, that he (Cossett) must look to the property conveyed by said trust deed for the payment of the indebtedness, stating that there was no margin in the property, and "that they thereby abandoned the same unto the said Cossett, and that the said Cossett must take the property; * * * that they would neither pay any more interest upon said note nor the taxes upon the said premises;" that neither of the Frenches, prior to 1890 and after the year 1887, has attempted to assert any right or title to the premises, but wholly abandoned the same unto Cossett and his assigns, nor did they pay any taxes or assessments or other charges upon the premises during said period, or pay any interest or any part of the principal of said debt, neither did the assignee in bankruptcy assert any right to the premises, nor pay any taxes, assessments or other charges thereon; that after such abandonment to Cossett he entered into possession of the premises under said trust deed and declared a forfeiture thereof; that in the year 1876 or 1877 the Frenches agreed to convey the premises to Cossett in satisfaction of said indebtedness, and that they did execute and deliver a deed of conveyance of their equity of redemption to said Cossett, which deed was never filed for record and could not be found.

Answers were filed to this cross-bill denying the facts upon which the Statute of Limitations was pleaded, denying all the allegations of the cross-petition as to the abandonment of the lots in satisfaction of the mortgage debt, and denying that any deed was ever executed or promised by the Frenches to Cossett.

On a reference to the master he reported the facts with his conclusions, in which he found the several conveyances as alleged in the bill and cross-bill, and also

that in the bankruptcy proceeding by the Frenches the property was not inventoried nor the indebtedness scheduled; that after the discharge in bankruptcy the assignee, in pursuance of an order of the court, offered the property for sale, and that it was bid in by said Chaffee; that Cossett filed objections to that sale and that it never was confirmed; that the Frenches failed to pay any part of the principal or interest of the $4950 debt, except that they gave their note for $470.88 interest on November 22, 1876; that they were repeatedly urged by both Cossett and Lyman to pay the same, but refused, and abandoned the property; that Cossett entered upon the land and took possession; that Goodman, upon receiving his title to the property from Cossett and wife on March 19, 1880, took possession of the premises and paid all taxes and assessments thereon for more than seven years; that in July, 1890, the Frenches inclosed the lots with a wire fence, and in January, 1892, conveyed the same to the original petitioner, Dan A. French; that the legal title being in Lyman, under the trust deed of January 12, 1874, he entered upon said premises by virtue thereof and exercised possessory acts over the same until the Frenches inclosed the same. The master recommended that the original petition be dismissed for want of equity, and that the prayer of the cross-petition be granted.

Exceptions to this report by the original petitioner being overruled, a decree was entered finding that Goodman is the owner of the premises, and that he derived title thereto by warranty deed from Cossett and wife of March 19, 1880; that upon receiving the deed he entered into possession of the premises under the same, claiming title thereto, and has exercised acts of ownership therein, by himself or his agents, from the date of his deed until the year 1890; that the deed was executed in good faith and for a valuable consideration, and that he has paid all taxes thereon for more than seven years; also finding the facts in regard to the trust deed substantially

as set up in the cross-bill and found by the master, and reciting the facts in regard to the bankruptcy proceeding as reported by the master, and stating that prior to said proceeding the Frenches informed Cossett, and Lyman, the trustee, that they must look to the land for the payment of the indebtedness, and abandoned the same to Cossett; that he relied upon said abandonment and accepted the possession so abandoned; that Cossett, by virtue of the default in payment of said note and interest, and by a power conferred by said trust deed, and with the consent of August and John M. French, entered into possession of said premises; that prior to 1890 neither August nor John M. French ever asserted any right or title to said premises, or paid the taxes thereon, or the $4950 assumed by them, or any interest thereon; that in 1876 or 1877 they agreed to convey the premises to Cossett in satisfaction of said indebtedness; that the conveyance by them to the petitioner, Dan A. French, was merely a matter of convenience and without consideration; that Dan A. French has shown no title to the premises; that Goodman should have the title established and confirmed in him, subject to the right of August and John M. French to pay the said Goodman the amount of the note, $4950, with interest thereon from January 12, 1876; that the rents and profits of said lands do not equal the amount of the taxes paid by Cossett and Goodman. It is then ordered that the petition be dismissed; that the title to the lots be confirmed in Goodman, unless within sixty days the Frenches pay him the sum of $12,878, with interest from date of decree, at five per cent, whereupon the said Goodman shall deliver to the said Frenches a deed to the premises, and if said sum be not paid within sixty days the Frenches shall execute and deliver a deed to the said Goodman of all their right, title and interest in said lands within ten days after the default of the payment of said $12,878, and that if they fail to deliver such deed within such time, a writ of assistance shall

issue placing Goodman in possession of the premises, and that August, John M. and Dan A. French pay the costs of the litigation.

WOOLFOLK & BROWNING, and WILLIAM GIBSON, for plaintiff in error:

It is well settled that title to land cannot be divested by loose and general conversations at a remote period. *Francis* v. *Roades*, 146 Ill. 635; *Vaughan* v. *Ham*, 6 B. Mon. 338; *Prentiss* v. *Mitchell*, 17 Ga. 558; *Clark* v. *Larkin*, 9 Iowa, 391; *Homer* v. *Speed*, 2 Patt. & H. 616; *Hoven* v. *Markstrom*, 67 Wis. 493.

The burden is upon the party maintaining that a deed was executed, to prove it, and to account for its loss. 13 Am. & Eng. Ency. of Law, 1088; *Lampy* v. *Kennedy*, 56 Wis. 249; *Kearney* v. *New York*, 92 N. Y. 617; *Elwell* v. *Cunningham*, 74 Me. 127.

Entry from year to year, for the purpose of cutting grass, is not sufficient for adverse possession. *Hayden* v. *McClosky*, 161 Ill. 351; *Roberts* v. *Baumgarten*, 51 N. Y. Sup. 482; *Wheeler* v. *Spinola*, 54 N. Y. 377.

Even building sidewalks upon the street adjoining a lot does not constitute an adverse possession. *Kuecken* v. *Voltz*, 110 Ill. 265.

To constitute adverse possession of land under color of title, possession must be exclusive and continuous during the period. Cutting grass would not be such exclusive and continuous possession. *Parker* v. *Parker*, 1 Allen, 245; *Coleman* v. *Billings*, 89 Ill. 189.

To constitute adverse possession of land such possession must be open and visible, and the land must be appropriated in such manner as to apprise the community or neighborhood of its locality that the land is in the possession and enjoyment of the person claiming it. *Hubbard* v. *Kiddo*, 87 Ill. 578; *Brooks* v. *Bruyn*, 18 id. 539.

It is well settled that where a party has paid taxes upon vacant and unoccupied land he must perfect his

title by taking actual possession before the bar of the statute becomes complete against the holder of the true title. *McDuffee* v. *Sinnott*, 119 Ill. 450; *Gage* v. *Smith*, 142 id. 195; *Gage* v. *Hampton*, 127 id. 93; *Newland* v. *Marsh*, 19 id. 385; *Paulin* v. *Hale*, 40 id. 277; *McCagg* v. *Heacock*, 42 id. 153; *Hale* v. *Gladfelter*, 52 id. 71; *Mecham* v. *Winstanley*, 77 id. 269; *Whitney* v. *Stevens*, id. 585.

It is well settled that the execution of a deed by a mortgagee not in possession, and not accompanied by the assignment of the indebtedness, is utterly void. *Ellis* v. *Sisson*, 96 Ill. 205; *Delano* v. *Bennett*, 90 id. 533; *Parker* v. *Roberts*, 140 id. 671; *Insurance Co.* v. *Lee*, 123 id. 93; *Barrett* v. *Hinckley*, 124 id. 44; *John* v. *Lewis*, 13 Minn. 365; *Jackson* v. *Curtis*, 19 Johns. 325; 15 Am. & Eng. Ency. of Law, 843-849, 50, 51, and authorities; *Wilson* v. *Troup*, 2 Cow. 231.

The claim or color of title and payment of taxes must concur in the same person. *Dunlop* v. *Dougherty*, 20 Ill. 397; *Dawley* v. *Vancourt*, 21 id. 460; *Hardin* v. *Gouveneur*, 69 id. 140; *Hurlbut* v. *Bradford*, 109 id. 397.

PENCE & CARPENTER, for defendant in error Goodman:

When the Frenches abandoned the property to Cossett, in 1878, Cossett from that time occupied the position of a mortgagee in possession. *Gorham* v. *Farson*, 119 Ill. 425; *Kilgour* v. *Gockley*, 83 id. 109; *Madison Ave. Church* v. *Oliver Street Church*, 73 N. Y. 82; 1 Jones on Mortgages, (4th ed.) sec. 716.

A mortgagee is allowed by law to take possession of the mortgaged premises after condition broken, and make the amount of his debt. A mortgagee is entitled to an immediate possession of the mortgaged premises, in the absence of an agreement to the contrary. 1 Jones on Mortgages, sec. 702; *Carroll* v. *Ballance*, 26 Ill. 9; *Kilgour* v. *Wood*, 60 id. 345; *Nelson* v. *Pinegar*, 30 id. 473; *Barrett* v. *Hinckley*, 124 id. 32; *Taylor* v. *Adams*, 115 id. 570.

An entry by a mortgagee under the mortgage is one of the methods known to the law of satisfying the mort-

gage indebtedness, and any entry upon mortgaged land made by a mortgagee is presumed to be for the purpose of foreclosure. 2 Jones on Mortgages, sec. 1244; *Taylor* v. *Weld,* 5 Mass. 109; *Hadley* v. *Houghton,* 7 Pick. 29; *Pollock* v. *Maison,* 41 Ill. 516.

The possession by the mortgagor and his grantees, after condition broken, is presumed to be subject to and subordinate to the mortgage. *Wright* v. *Sperry,* 25 Wis. 617; *Maxwell* v. *Hartwell,* 50 id. 660; *Jackson* v. *Warren,* 32 Ill. 331; *Hazen* v. *Gates,* 61 id. 180.

A mortgagee cannot be divested of his possession until the mortgage indebtedness is paid. *Van Duyne* v. *Thayer,* 14 Wend. 233; 1 Jones on Mortgages, (4th ed.) sec. 715; *Phyfe* v. *Riley,* 15 Wend. 248; *Hennessey* v. *Farrell,* 20 Wis. 42; *Fountain* v. *Bookstaver,* 141 Ill. 461; *Madison Ave. Church* v. *Oliver Street Church,* 73 N. Y. 82; *Chase* v. *Peck,* 21 id. 581.

An entry once made by a mortgagee suspends the operation of the Statute of Limitations. *Altemas* v. *Long,* 4 Barr, 254; *Hinman* v. *Crammer,* 9 id. 40; *Altemas* v. *Campbell,* 9 Watts, 28; *Miller* v. *Shaw,* 7 S. & R. 129; *Ingersoll* v. *Lewis,* 11 Pa. St. 212.

A mortgagor will not be allowed to come into equity asking for a conveyance of the legal title without offering to pay the amount of the mortgage debt. *De Walsh* v. *Braman,* 160 Ill. 415; *Miller* v. *Shaw,* 103 id. 277.

Mr. JUSTICE WILKIN delivered the opinion of the court:

It is clear that much of this decree is erroneous, and goes beyond the allegations of the cross-bill upon which it is based. While it treats the title as in Goodman, it assumes to establish a lien upon the property in his favor which could only exist upon the theory that the title is in the Frenches. The Burnt Records act (3 Starr & Curtis, 1896, par. 15, p. 3352,) provides for two kinds of petitions: one to establish title to the premises, and the other to establish liens, whether by statute, judgment,

mortgage, deed of trust or otherwise. Paragraph 20 of that act provides that a decree establishing title "shall not in anywise affect any lien or liens to which said fee may be subject, and which have been created since the destruction of such records, whether the same be by mortgage, deed of trust, judgment, statute, mechanic's lien or otherwise, but shall leave all such liens to be ascertained or established in some other proceeding, or to be enforced as the parties holding them may see fit." Both the original and cross-petitions in this case are for the purpose of establishing title in the parties claiming under their respective petitions as owners in fee, and all that is said in either about the trust deed is surplusage, unless the cross-petitioner succeeded by his proof in establishing, as he alleged in his petition, that he derived title to the premises in fee by virtue of that trust deed. In other words, his cross-petition is not for the purpose of establishing a lien upon the premises by virtue of the trust deed, but for the purpose of establishing the fee simple title in himself.

It is said in the argument of counsel for defendant in error that under his general prayer for relief he is entitled to a decree of foreclosure. We do not regard this position tenable, but if it could be sustained the decree is not one of foreclosure.

We are of the opinion that for the reasons stated the decree of the circuit court must be held erroneous, as it establishes the title to the property in neither of the contending parties, but leaves it dependent upon the satisfaction of the lien established upon the same by the trust deed.

While Dan A. French is confessedly not the real owner of the premises, yet if, as against Goodman, August and John M. French are entitled to have the title confirmed in them, that legal title is vested in their grantee, and no injury results to any of the parties by that fact. So considered, it seems too clear for argument that the legal

title is vested in him, unless the cross-petitioner, Goodman, has shown title in himself under the Statute of Limitations. All that is said as to Cossett, or Lyman, the trustee, becoming mortgagee in possession of the property, is material only for the purpose of showing that the mortgage debt was kept alive notwithstanding the lapse of ten years from and after its maturity. There is no such thing, under our statute, as a foreclosure of a mortgage by the mortgagee taking possession of the premises. His possession as mortgagee will not ripen into a title in fee to the premises or bar the equity of redemption. As mortgagee in possession he may unquestionably retain the same until his debt is satisfied out of the rents and profits, or by payment, but when so satisfied he is no longer entitled to the possession and has acquired no title to the property.

The allegation that the Frenches made a quit-claim deed to Cossett for the property is not sustained by proof.

The bankruptcy proceeding, so far as we are able to understand, cuts no figure whatever in the case as between these parties. In our view, therefore, the only ground upon which Goodman can claim to have become seized of the title in fee simple is by virtue of the seven years statute of limitations. That his title from Cossett is color of title made in good faith is not questioned. Neither is it denied that he paid all taxes and assessments upon the property from the date of that deed to the filing of the petition, and even since then, covering much more than the seven years statutory period. The point of difficulty, therefore, in his case, if one exists, must be whether or not he has proved such possession as entitles him to invoke the bar of the statute. The property was vacant and unoccupied, and, while laid off into blocks as a subdivision, was to ordinary observation a part of a large tract of prairie land, which was not, therefore, susceptible of those acts of visible adverse possession and control which usually characterize property

claimed to be held adversely. There is testimony, especially that of Lyman, to the effect that such possession and acts of ownership were taken and exercised over the property during these years as the same was susceptible of, such as occasionally visiting the place, employing an agent to look after the same, keeping trespassers from intruding upon it, etc.; and while we do not wish to be understood as holding that, under all circumstances, the proof found in this record would be sufficient to sustain a finding of adverse possession under the Statute of Limitations, we are inclined to hold that, in view of the fact that prior to the conveyance by Cossett to Goodman the Frenches, who held the title in fee, subject to an incumbrance which is admitted in the original petition to have been in excess of the value of the property, abandoned the property to Cossett, he taking possession thereof, adverse possession is sufficiently established against them.

In our view of the whole record we think Goodman's title is sufficiently established under the Statute of Limitations. The decree below will accordingly be reversed and the cause will be remanded to the circuit court, with directions to enter a decree confirming the title in him.

*Reversed and remanded.*